WATSON *v.* ANDREWS & CO.

1. SET-OFF AND RECOUPMENT—EVIDENCE—ADMISSIBILITY.

In an action for money due from defendant to plaintiff, where defendant attempted to set off damages for plaintiff's failure to deliver to it certain shares of stock which it claimed to have purchased of him, defendant's receipt to plaintiff as trustee in the purchase of the same stock was admissible in evidence as tending to show that in relation to said stock defendant dealt with plaintiff as trustee rather than as an individual.

2. SAME—TRUSTEE—NOTICE.

Where defendant knew, or should have known, that in dealing with plaintiff in relation to certain shares of stock, he was acting as trustee, it cannot set off a claim arising therefrom in a suit brought by him in his individual capacity.

Error to Wayne; Davis, J., presiding. Submitted January 16, 1918. (Docket No. 101.) Decided June 3, 1918.

Assumpsit by Eugene Watson against Andrews & Company for an amount due on an account. Judg-

ment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Bailey & Bradley* (*Samuel Shaw Parks*, of counsel), for appellant.

*Moloney & Mendelsohn*, for appellee.

The plaintiff is a resident of Flint, Michigan. The defendant is a stockbroker maintaining an office for the transaction of business in the city of Chicago. During the years 1914 and 1915, plaintiff transacted considerable business with defendant in the way of buying and selling stocks. As a result of his various transactions with defendant there was on October 21, 1915, according to a statement rendered by defendant to plaintiff, due plaintiff the sum of $4,900. Payment of this sum having been refused by defendant this action in assumpsit for its recovery was brought by plaintiff. Defendant interposed a plea of the general issue and gave notice thereunder to the effect that upon the trial it would show that on or about the 27th day of September, 1915, plaintiff had sold to defendant 10 shares of the common capital stock of the Saxon Motor Car Co. for $275 per share, making a total of $2,750; that thereafter plaintiff had neglected and refused to deliver said 10 shares of Saxon Motor Car Co. stock although repeatedly requested so to do,—

"whereby defendant has lost large sums of money, to wit: the sum of $12,000, which said sum of money or so much thereof as will be sufficient for that purpose, the defendant will set off against the demand of the plaintiff and have the balance certified in its favor."

The parties went to trial upon these pleadings and upon the trial it appeared without dispute that defendant had in its hands belonging to plaintiff as of October 21, 1915, the sum of $4,900 which, together

with interest to the date of hearing, made a total of $5,249.05. Defendant to sustain its plea of set-off and recoupment offered the evidence of one Pollitz, an employee of the defendant, who testified that he had a conversation with plaintiff on September 27, 1915, in which plaintiff said:

"I would like to sell that ten shares of Saxon I got."

To which the witness replied:

"All right, wait till I get Andrews on the wire to see what he can bid for it."

Witness testified that he got defendant Andrews on the telephone and that Andrews said he would pay $275 a share for the stock; that he reported this offer to plaintiff who said:

"All right, sell it";

—that thereafter he handed the telephone to plaintiff, Watson, who had some further conversation with Andrews about it. On that same day Andrews & Co. sent the following unsigned memorandum to plaintiff:

"ANDREWS & COMPANY,
"Dealers in Inactive and Unlisted Securities,
"108 South La Salle Street.
"Telephone Main 4930.
"Private exchange to all departments.
"CHICAGO, Sept. 27, 1915.
"MR. EUGENE WATSON:
"We have bought from you the following stocks: 10 Saxon common, price $275, net amount $2,750."

This was received by plaintiff on the next day, September 28th, and the following letter, unsigned, was sent by him to the defendants:

(Letterhead of Harry W. Watson Company.)
"Tuesday, Sept. 28th, 1915.
"ANDREWS & CO.,
"Chicago, Ill.
"*Gentlemen:* Your acknowledgment of September 27th for the sale of ten shares of Saxon common at

$275, came somewhat as a surprise to me as I understood this was simply an offer on your part as I have been holding this stock for $300, which was the price I paid you. It is necessary in any event to have probate court's papers authorizing the transfer.

"Respectfully yours."

Another letter apparently written by plaintiff to defendant but likewise unsigned is in part as follows:

(Letterhead of Harry W. Watson Co.)

"FLINT, MICH., Monday, Oct. 4, 1915.

"ANDREWS & CO.,

"Chicago, Ill.

"*Gentlemen:* In connection with Saxon Motor Co. stock which Mr. Andrews advised a sale at $275 some ten days ago, Mr. J. C. Johnson of the Peninsular State Bank, Detroit, obtained a temporary injunction against the Watson estate, tieing up not only the principal but also the interest of anything in my hands as trustee. The hearing is not until October 24th. This covers a disputed account against H. W. Watson and I intend to fight this thing to the finish. The judge tells me, however, that it is questionable whether any of the assets of the estate can be transferred, at least not during the injunction and that it would not be advisable during the course of the suit, which length of time it would be impossible to state. As this would place me in a bad position in case delivery was demanded and I understand you simply bought this as a personal favor, trust you will allow same to be canceled until things clear up in the future when I will give you selling order at the market."

On October 23, 1915, plaintiff wrote defendant a letter which he signed and which contains the following:

"In regard to the ten shares of Saxon common, delivery of this can be made on or about November 6th."

—and on October 27th, another signed communication containing the following:

"In regard to the Saxon Motor, you understood this

sale thoroughly, Mr. Pollitz being in the office at the time, and was informed there would be a considerable delay as it was necessary to secure probate papers which was further complicated by your injunction, which, however, we worked out in a short time. As you committed yourself, knowing the delay that would ensue, I cannot see where I am open to any criticism. Please see that the bonds are here promptly on the proper date of delivery so that I may issue myself a check from the estate's funds to reimburse the amount that you are now holding in Chicago."

On November 6, 1915, plaintiff wrote defendant another letter in which we find the following:

"In regard to the estate's matter of stock, I at no time personally assumed any responsibility in this matter, nor do I do so at present. There are certain conditions existing in the estate which are unfortunate at present. I was fortunate enough to secure the probate's order to sell General Motors Preferred some 60 days ago and before the estate was involved by suit of John Johnson. I have not at this date yet been able to secure transfer papers on this stock although same have been in New York ever since, and I am informed that I cannot secure a remittance covering the transfer until the 17th so a delay of this nature is not unusual and will be even longer in your case, because of the conditions I have outlined previously. If you were foolish enough to involve yourselves as you say you did, before the delivery of the stock I refuse to accept any responsibility."

Evidence was offered on behalf of the plaintiff and received over the objection of the defendant, showing that plaintiff as trustee for the estate of Harry W. Watson, had on May 27, 1914, bought from the defendant the 10 shares of Saxon Motor Car Company common stock for the sum of $3,000, and defendant's receipt for said sum was offered and received in evidence over objection. Defendant introduced testimony to the effect that between September 27, 1915, and January 17, 1916, when this suit was started, the Saxon Motor Car Co. common stock rose

to the phenomenal figure of $1,800 per share.  No proof was offered on behalf of defendant that it had between said dates or at any other time purchased 10 shares of Saxon common at any price to replace the 10 shares which plaintiff failed to deliver.  The testimony being closed, plaintiff requested the court to direct a verdict in his favor for the sum of $4,900 and interest, concededly in defendant's hands.  This the court did, holding that the contract between the parties for the purchase of the 10 shares of Saxon stock was void under the statute of frauds.  He further held that the defendant had knowledge or notice of the fact that the 10 shares of Saxon stock, the subject of the contract, was owned by the estate of Harry W. Watson and that it would therefore be necessary for plaintiff, as trustee, to obtain an order of the court before transfer.

BROOKE, J. (*after stating the facts*).  There is no disputed question of fact in the case.  The only assignment of error requiring consideration is that the court erred in directing a verdict for the plaintiff and in refusing to direct a verdict for the defendant upon its claim of set-off and recoupment.  The action of the court in admitting evidence of the fact that defendant had sold the 10 shares of Saxon stock to the estate of Harry W. Watson is urged as reversible error.

We think it was competent for plaintiff to show, in answer to defendant's claim of set-off and recoupment, that defendant in undertaking the purchase of said stock was dealing with him as trustee for the estate and the written evidence introduced as to the original purchase from defendant of the stock was of legitimate probative value for that purpose.

It seems to be conceded by counsel for the defendant that the oral contract between Mr. Pollitz, representing defendant, and plaintiff would have been

unenforceable as falling within the statute. It is clear that there was no delivery or acceptance of the whole or any portion of the goods or choses in action contracted for and it is equally clear that there was nothing paid on account of the purchase price thereof. There remains then the question whether there is—

"some note or memorandum in writing of the contract or sale, signed by the party to be charged, or his agent in that behalf." 3 Comp. Laws 1915, § 11835.

This brings us to a consideration of the correspondence. The letter of September 27, 1915, from defendant to plaintiff in which it is stated:

"We have bought from you the following stocks: Ten Saxon common, — Price: $275, Net amount: $2,750."

—is unsigned by the defendant and is the only written evidence contained in the record tending to show that it ever agreed to buy from the plaintiff the stock in question. Did this writing bind the defendant to accept and pay for the said stock when it was tendered to it by plaintiff? It seems plain that it did not and upon this assumption plaintiff asserts that the contract is void for lack of mutuality, citing *Wilkinson* v. *Heavenrich*, 58 Mich. 574; *Willebrandt* v. *Sisters of Mercy*, 185 Mich. 366, and the cases therein cited. Answering this claim, defendant urges that it had agreed orally to the purchase of the stock and that the statute requires that the written note or memorandum of the contract shall be signed by the party to be charged only. We think it unnecessary to discuss the issue thus raised in this case because in our opinion defendant cannot recover on its claim of set-off and recoupment for the following reason: It seems quite clear upon the record that defendant knew or should have known in negotiating for the purchase of this stock that it belonged to the

estate of Harry W. Watson and that the plaintiff in said negotiations was acting as trustee. The failure to deliver the stock therefore imposed no liability upon the plaintiff to defendant as an 'individual. It cannot set off a claim for which he is not liable as an individual in an action brought by him in his individual capacity. Many authorities are collected in the briefs of counsel touching upon the question whether sufficient can be gathered from the correspondence to satisfy the statute of frauds. This question as well as the earlier one raised may be dismissed with the observation that our conclusion on the point last decided is controlling.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.